1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10    ASHISH S. PANDYA,                        CASE NO. C23-1947JLR

11                         Plaintiff,          ORDER

12          v.

13    BANK OF AMERICA,

14                         Defendant.

15                          **I.    INTRODUCTION**

16          Before the court is Defendant Bank of America's motion to dismiss *pro se*

17    Plaintiff Ashish S. Pandya's complaint.  (MTD (Dkt. # 7).)  Mr. Pandya did not respond

18    to the motion (*see generally* Dkt.), but later filed a motion to amend his complaint (MTA

19    (Dkt. # 10)).  The court has considered the motions, the relevant portions of the record,

20    //

21    //

22    //

1    and the applicable law.  Being fully advised,[1] the court GRANTS Bank of America's

2    motion to dismiss and DENIES Mr. Pandya's motion to amend as moot.

3                                    **II.    BACKGROUND**

4            Mr. Pandya filed his complaint on December 19, 2023.  (Compl. (Dkt. # 1).)  On

5    January 5, 2024, Mr. Pandya filed a supplemental document titled "Case Brief" in which

6    he describes the facts of his case, supported by various exhibits.  (Supp. (Dkt. # 5).)  The

7    court liberally construes these documents and the exhibits together to comprise Mr.

8    Pandya's complaint.  (*See* Compl.; Supp.)

9            Mr. Pandya owns a small business called "Miash" and is a former employee of

10   Bank of America whose employment ended on June 3, 2021.  (Compl. at 4; Supp. at 1.)

11   Mr. Pandya claims that on his first day of work, Bank of America presented him a

12   contract that would take his "civil liberties and rights away and [his] personal business

13   away."  (Supp. at 1.)  In support of this allegation, Mr. Pandya cites what appears to be an

14   unsigned, boilerplate employment agreement with Bank of America.  (*Id.*, Ex. 1.)

15   Thereafter, Mr. Pandya claims that Bank of America hacked his phone and deleted

16   certain information.  (*Id.*)  Mr. Pandya appears to allege that he is a victim of fraud and

17   identity theft.  (*See id.*)  He claims that a trust was established "through the banks" in

18   2018 in Australia, and that "they attached [his] name [and] ID to this trust," which was

19   fraudulently funded with an Aetna life insurance plan that Mr. Pandya obtained through

20

21            [1] Neither party has requested oral argument (*see* MTD at 1; MTA at 1), and the court
     determines that oral argument would not be helpful to its disposition of the motion, *see* Local
22   Rules W.D. Wash. LCR 7(b)(4).

1    his employment in 2019.  (*Id.*)  Mr. Pandya alleges that he "was falsely accused of being

2    a Chinese spy" so that "they . . . could take life insurance out on" him, and that he "was

3    being targeted by the Bank," and that this conduct continued until 2021.  (Supp. at 1; *see*

4    *also* Compl. at 5 ("They copied my phone to create a[n] illusion of to [sic] frame me for

5    fraud and crested a common enterprise and used property and Id [sic] to create a trust

6    overseas and intentional injury.").)  He further alleges that "the bank" retaliated against

7    him and his family, "the trust was closed in December of 2022," and "the Bank and

8    regulators" have been attacking him through the present day.  (*Id.*)

9          Mr. Pandya filed a charge with the Equal Employment Opportunity Commission

10   ("EEOC") on July 24, 2023.  (MTD at 3; *id.*, Ex. A ("EEOC Documents")[2].)  He received

11   a right to sue notice on October 6, 2023.  (Compl. at 6; EEOC Documents.)  Mr. Pandya

12   then filed this lawsuit, alleging discrimination and retaliation and raising claims under

13   Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of

14   1967 ("ADEA"), the Americans with Disabilities Act of 1990 ("ADA"), and

15   Washington's "Civil Rights Act," which the court construes as a claim under the

16

17   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [2]  The court GRANTS Bank of America's request for judicial notice of the relevant
18   EEOC documents in this matter.  (*See* MTD at 3.)  "[A] district court ruling on a motion to dismiss
     may consider a document the authenticity of which is not contested, and upon which the plaintiff's
19   complaint necessarily relies."  *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998); *see also*
     *Gobin v. Microsoft Corp.*, No. C20-1044MJP, 2021 WL 148395, at *2 (W.D. Wash. Jan. 15, 2021)
20   (taking judicial notice of EEOC documents in a Title VII action).  Because Mr. Pandya raises claims
     that require EEOC exhaustion, his complaint necessarily relies upon these documents, the
     authenticity of which he does not contest. (*See generally* Dkt.)  The court therefore takes judicial
21   notice of (1) the August 21, 2023 notice of charge of discrimination; (2) the August 29, 2023
     notification and acknowledgement of dual-filed charge; (3) the October 6, 2023 emails between Mr.
22   Robert W. Parker and Drew Denman concerning Mr. Pandya's EEOC charge; and (4) the October 6,
     2023 right to sue notice.  (*See* MTD, Ex. A.)

1  Washington Law Against Discrimination ("WLAD"), ch. 49.60 RCW.  (Compl. at 3-5.)

2  Mr. Pandya asserts he was discriminated against on the basis of gender/sex, religion, and

3  national origin.  (Compl. at 5.)  Mr. Pandya also raises claims under the Due Process

4  Clause of the Fifth and Fourteenth Amendments.  (*Id.* at 4.)  On January 8, 2024, Bank of

5  America moved to dismiss the complaint.  (*See generally* MTD.)  Mr. Pandya did not

6  respond to the motion (*see generally* Dkt.) but filed his own motion seeking to amend the

7  complaint on February 2, 2024 (*see generally* MTA).

8                            III.   ANALYSIS

9          Below, the court sets forth the legal standard governing dismissal before turning to

10  Bank of America's motion to dismiss.

11  **A.   Legal Standard**

12         Because Mr. Pandya is a *pro se* Plaintiff, the court must construe his pleadings

13  liberally.  *See McGuckin v. Smith*, 974 F.2d 1050, 1055 (9th Cir. 1992).  Federal Rule of

14  Civil Procedure 12(b)(6) provides for dismissal when a complaint "fail[s] to state a claim

15  upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6); *see also* Fed. R. Civ. P.

16  8(a)(2) (requiring the plaintiff to provide "a short and plain statement of the claiming

17  showing that the pleader is entitled to relief").  Under this standard, the court construes

18  the allegations in the light most favorable to the nonmoving party, *Livid Holdings Ltd. v.*

19  *Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005), and asks whether the

20  claim contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is

21  plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

22  *Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The court need not accept as true legal

conclusions, "formulaic recitation[s] of the legal elements of a cause of action," *Chavez v. United States*, 683 F.3d 1102, 1008 (9th Cir. 2012), or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the pleading standard announced by Federal Rule of Civil Procedure 8 does not require "detailed factual allegations," it demands more than "an unadorned, the-defendant-unlawfully harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *see also* Fed. R. Civ. P. 8(a).

**B.    Bank of America's Motion to Dismiss**

Bank of America seeks to dismiss the complaint for lack of standing, failure to state a claim, and failure to exhaust administrative remedies. The court begins with the threshold issue of Article III standing, then addresses Mr. Pandya's claims in turn.

1. <u>Standing</u>

Bank of America argues Mr. Pandya lacks standing to bring his claims. The court agrees in part. "Plaintiffs must demonstrate standing for each claim that they press." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). At the pleading stage, a plaintiff must clearly allege facts demonstrating each element of standing under Article III of the United States Constitution. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To establish Article III standing, a plaintiff must show that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely

1  to be redressed by a favorable judicial decision." *Id.* (quoting *Warth v. Seldin*, 422 U.S.

2  490, 518 (1975)).  "To establish injury in fact, a plaintiff must show that he or she

3  suffered 'an invasion of a legally protected interest' that is 'concrete and particularized'

4  and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan v.*

5  *Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

6          Here, Bank of America argues Mr. Pandya "does not allege any facts"

7  demonstrating an injury in fact.  (MTD at 6.)  Bank of America is correct with respect to

8  Mr. Pandya's due process claims, for which he fails to allege actual rather than

9  conjectural injury.  Mr. Pandya merely claims that Bank of America presented him with a

10  document that "*would*" take his "civil liberties and rights" and "personal business away."

11  (Supp. (emphasis added).)  Mr. Pandya attaches that document to his complaint, but it is

12  unsigned.  (Supp., Ex. 1 (Dkt. # 5-1).)  Mr. Pandya therefore fails to allege that he ever

13  was a party to the agreement or that the document in fact took his rights or business from

14  him.  Accordingly, Mr. Pandya fails to allege injury in fact with respect to his due

15  process claims and he lacks standing to pursue those claims.

16          In contrast, the court concludes that Mr. Pandya sufficiently alleges injury in fact

17  with respect to his claims under Title VII, the ADA, the ADEA, and WLAD, though

18  barely.  These claims appear to be rooted in allegations of "intentional injury" (Compl. at

19  5) by the "banks" through the fraudulent creation of a trust in Mr. Pandya's name, which

20  was fraudulently funded with a life insurance policy that named him as the insured (Supp.

21  at 1.).  The trust allegedly continued from 2018 to 2022, and as a result of this scheme,

22  the "Banks and regulators" have been "attac[k]ing" Mr. Pandya through the present day.

1   (*Id.*)  Although these allegations lack detail, are somewhat difficult to discern, and bear

2   little resemblance to typical employment discrimination or retaliation claims, they meet

3   the threshold requirements of Article III standing.  In the court's view, the sufficiency of

4   these allegations is less of a standing issue and more of a Rule 8 issue.  *See* Fed. R. Civ.

5   P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is

6   entitled to relief"); *Iqbal*, 556 U.S. at 678 (explaining that Rule 8 requires some degree of

7   factual content beyond "an unadorned, the-defendant-unlawfully-harmed-me

8   accusation").  Accordingly, the court declines to dismiss Mr. Pandya's claims under Title

9   VII, the ADA, the ADEA, and WLAD on standing grounds.  Mr. Pandya's due process

10  claims, however, are DISMISSED without prejudice and with leave to amend for lack of

11  Article III standing.  If Mr. Pandya wishes to continue pursuing his due process claims,

12  he must file an amended complaint setting forth factual allegations demonstrating that he

13  suffered an injury in fact in that his business and/or rights were actually taken from him.

14          2.  Fifth and Fourteenth Amendment Due Process

15          Although the court has dismissed Mr. Pandya's due process claims for lack of

16  standing, Mr. Pandya could nevertheless cure this deficiency upon filing an amended

17  complaint.  Consequently, the court must also examine whether the factual allegations

18  supporting Mr. Pandya's due process claims meet minimum pleading requirements.  The

19  court concludes that they do not.

20          Mr. Pandya raises due process claims under the Fifth and Fourteenth Amendments

21  to the United States Constitution.  (Compl. at 4.)  The Due Process Clause prohibits

22  government actors from depriving "any person of life, liberty, or property, without due

process of law."  U.S. Const. amend. V, XIV; *see also Castillo v. McFadden*, 399 F.3d

993, 1002 n.5 (9th Cir. 2005) ("The Fifth Amendment prohibits the federal government

from depriving persons of due process, while the Fourteenth Amendment explicitly

prohibits deprivations without due process by the several States.").  There are two types

of due process claims:  substantive and procedural.  To state a substantive due process

claim, a plaintiff must allege that a government actor "deprived [him] of a

constitutionally protected life, liberty, or property interest."  *Shanks v. Dressel*, 540 F.3d

1082, 1087 (9th Cir. 2008).  To state a procedural due process claim, a plaintiff must

allege:  (1) a deprivation of a constitutionally protected liberty or property interest, and

(2) a denial of adequate procedural protections.  *Kildare v. Saenz*, 325 F.3d 1078, 1085

(9th Cir. 2003).  "A protected property interest is present where an individual has a

reasonable expectation of entitlement deriving from 'existing rules or understandings that

stem from an independent source such as state law.'"  *Wedges/Ledges of Cal., Inc. v. City

of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564,

577 (1972)) (holding that arcade game manufacturer had constitutionally protected

property interest in new license tags for its machines).

Although the Due Process Clause generally restricts only government actors, a

plaintiff can nonetheless assert a due process claim against a private actor whose conduct

amounts to state or federal action.  *See Brentwood Acad. v. Tenn. Secondary Sch. Athletic

Ass'n*, 531 U.S. 288, 295 (2001).  "The Supreme Court has articulated four tests for

determining whether a private individual's actions amount to state action:  (1) the public

function test; (2) the joint action test; (3) the state compulsion test; and (4) the

1   governmental nexus test." *Franklin v. Fox*, 312 F.3d 423, 444-45 (9th Cir. 2002).  First,

2   "[u]nder the public function test, 'when private individuals or groups are endowed by the

3   State with powers or functions governmental in nature, they become agencies or

4   instrumentalities of the State and subject to its constitutional limitations.'" *Lee v. Katz*,

5   276 F.3d 550, 554-55 (9th Cir. 2002) (quoting *Evans v. Newton*, 382 U.S. 296, 299

6   (1966)) (holding a private entity engaged in a public function by regulating free speech

7   on property leased from the City of Portland).  Second, "[t]he joint action test asks

8   'whether state officials and private parties have acted in concert in effecting a particular

9   deprivation of constitutional rights.'" *Tsao*, 698 F.3d at 1140 (quoting *Franklin*, 312

10  F.3d at 445) (holding a private entity engaged in joint action because its security guards

11  operated under a "system of cooperation and interdependence with" the Las Vegas Police

12  Department).  Third, "[s]tate action may be found under the state compulsion test where

13  the state has 'exercised coercive power or has provided such significant encouragement,

14  either overt or covert, that the [private actor's] choice must in law be deemed to be that of

15  the State.'" *Johnson v. Knowles*, 113 F.3d 1114, 1119 (9th Cir. 1997) (quoting *Blum v.

16  Yaretsky*, 457 U.S. 991, 1004 (1982)) (finding no state action under state compulsion test

17  where homosexual plaintiffs argued that a California law compelled a political committee

18  to oust them, where the law merely authorized removal of members).  Finally, under the

19  nexus test, the court considers whether there is a "sufficiently close nexus between the

20  State and the challenged action of the regulated entity so that the action of the latter may

21  be fairly treated as that of the State itself." *Jackson v. Metro. Edison Co.*, 419 U.S. 345,

22  351 (1974); *see also, e.g.*, *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 723 (1961)

1    (holding sufficient nexus existed where a private coffee shop leased space from a

2    publicly-owned parking garage and served garage clientele).

3         Here, the only factual allegation potentially relevant to a due process claim is Mr.

4    Pandya's assertion that Bank of America presented him with a document that would

5    "take [his] civil liberties and rights away and [his] personal business away." (Supp. at 1.)

6    There are several problems with this. Whether a plaintiff has a constitutionally protected

7    property interest is a fact-specific inquiry, and Mr. Pandya does not explain the

8    circumstances under which his business was taken away. Without more, the court cannot

9    discern whether he plausibly has a constitutionally protected property interest at stake.

10   *See, e.g.*, *Reed v. Vill. of Shorewood*, 704 F.2d 943, 949 (7th Cir. 1983) (holding that

11   local officials deprived bar owners of constitutionally protected interest in their business

12   by repeatedly attempting to revoke the liquor license and interfering with the sale of the

13   bar, leading owners to close the business); *Jacobson v. Hannifin*, 627 F.2d 177, 179 (9th

14   Cir. 1980) (holding plaintiff did not have a constitutionally protected property interest in

15   a new gaming license, a necessary component of his business as a casino landlord,

16   because state law afforded the gaming commission wide discretion to deny such

17   licenses). Mr. Pandya also references "civil liberties and rights" but fails to specify those

18   rights or the circumstances under which he claims they were infringed upon. (Supp. at

19   1.) In fact, as noted above, Mr. Pandya makes no allegation that his rights or business

20   were ever actually taken from him—only that they could have been. (*See id.*) Mr.

21   Pandya also fails to make any allegation that he was denied adequate procedural

22   protections. (See *id.*; Compl.) Most fatally, the Due Process Clause does not apply to

1   private actors such as Bank of America, and Mr. Pandya makes no factual allegations

2   demonstrating that Bank of America's conduct amounts to state or federal action.  (*See*

3   Supp.; Compl.)

4          Accordingly, the court DISMISSES Mr. Pandya's due process claims without

5   prejudice and with leave to amend on the alternative ground that Mr. Pandya fails to state

6   a claim.  If Mr. Pandya wishes to continue pursuing a substantive due process claim, he

7   must file an amended complaint setting forth factual allegations demonstrating not only

8   that he has Article III standing, but that a federal or state actor (or a private actor whose

9   conducted amounted to federal or state action under one of the four above-described

10  tests) deprived him of a constitutionally protected life, liberty, or property interest.  Mr.

11  Pandya must specifically identify the interest at stake and the circumstances under which

12  he claims to have been deprived of that interest.  If Mr. Pandya wishes to continue

13  pursuing a procedural due process claim, he must set also forth factual allegations

14  demonstrating that he was denied adequate procedural protections.

15          3.  Title VII, the ADEA, and the ADA

16          Mr. Pandya's discrimination claims under Title VII, the ADEA, and the ADA fail

17  for two reasons: (1) Mr. Pandya has not shown that he exhausted his administrative

18  remedies prior to filing suit, and (2) the factual allegations supporting these claims fail to

19  meet minimum pleading requirements.  The court first addresses administrative

20  exhaustion before turning to the specific facts supporting Mr. Pandya's claims under Title

21  VII, the ADEA, and the ADA.

22  *//*

1              *a. Administrative Exhaustion*

2       Administrative exhaustion is a prerequisite to filing suit under Title VII, the

3    ADEA, and the ADA.  42 U.S.C. § 200e-5(e)(2) (Title VII); 29 U.S.C. § 626(d)(1) (the

4    ADEA); 42 U.S.C. § 12117 (the ADA); *see also, e.g.*, *MacDonald v. Grace Church*

5    *Seattle*, 457 F.3d 1079, 1088 (9th Cir. 2006) (affirming dismissal of Title VII claims

6    where the plaintiff failed to timely file an EEOC charge); *Sanchez v. Pac. Powder Co.*,

7    147 F.3d 1097, 1100 (9th Cir. 1998) (holding that ADEA plaintiffs timely filed their

8    EEOC charges); *Josephs v. Pac. Bell*, 443 F.3d 1050, 1061-62 (9th Cir. 2006) (holding

9    ADA plaintiff exhausted his administrative remedies).  This means a plaintiff generally

10   must file a charge with the EEOC and obtain a right-to-sue letter before bringing civil

11   claims.  *E.g.*, *Scott v. Gino Morena Enters.*, LLC, 888 F.3d 1101, 1106 (9th Cir. 2018).

12   Title VII and ADA regulations require an EEOC charge to be verified in that it must "be

13   in writing under oath or affirmation."  29 C.F.R. § 1601.9; *see also West v. Alaska*

14   *Airlines, Inc.*, No. 3:18-cv-00102-SLG, 2018 WL 6424705, at *4-5 (D. Alaska Dec. 6,

15   2018) (dismissing disability discrimination claim where the plaintiff "provide[d] no

16   explanation for her failure to file a verified charge").  *Cf.* 29 C.F.R. § 1602.12(b)

17   (explaining that failure to verify is a technical deficiency that may be later cured by

18   amendment); *McWilliams v. Latah Sanitation, Inc.*, 149 F. App'x 588, 590 (9th Cir. Aug.

19   23, 2005) (reversing dismissal of ADA claims based on failure to exhaust because the

20   plaintiff's unverified charge was a "mere technical defect . . . not fatal to his suit" and "he

21   must be provided with the opportunity to amend his charge").  Because Washington is a

22   "deferral state," a plaintiff must file his EEOC charge within 300 days of the allegedly

1   offending conduct.  29 U.S.C. § 626(d)(1)(B); 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C.

2   § 12117; *see also Seidler v. Amazon*, No. C23-0816JLR, 2024 WL 97351, at *3 (W.D.

3   Wash. Jan. 9, 2024).  This filing requirement "is subject to waiver, estoppel, and

4   equitable tolling."  *Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1009 (9th Cir. 2011)

5   (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)).

6          Here, Mr. Pandya alleges his employment at Bank of America ended on June 3,

7   2021, yet he did not file his EEOC charge until over two years later on July 24, 2023—

8   well beyond the 300-day time limit.  (*See* Compl. at 4; EEOC Documents.)  Mr. Pandya

9   alleges no facts suggesting that equitable doctrines such as waiver, estoppel, or tolling

10  render his EEOC charge timely.  (*See generally* Compl.); *Johnson*, 653 F.3d at 1009.  It

11  therefore appears that Mr. Pandya's EEOC charge was untimely, which is fatal to his

12  claims under Title VII, the ADEA, and the ADA.

13         Bank of America also seeks dismissal of Mr. Pandya's Title VII and ADA claims

14  on the additional ground that Mr. Pandya failed to perfect his EEOC charge, meaning he

15  did not verify it.  (*See* MTD at 4-5.)  Bank of America is correct that, as of October 6,

16  2023, Mr. Pandya's EEOC charge was not verified as required by 29 C.F.R. § 1601.9.

17  (*See* EEOC Documents (containing an October 6, 2023 email from an EEOC

18  representative advising that Mr. Pandya had not perfected his charge).)  Because Mr.

19  Pandya failed to properly exhaust his administrative remedies, his discrimination claims

20  under Title VII, the ADEA, and the ADA are DISMISSED without prejudice and with

21  leave to amend.  If Mr. Pandya wishes to continue pursuing these claims, he must file an

22  amended complaint setting forth factual allegations that establish:  (1) his EEOC charge

1    was rendered timely via waiver, estoppel, or tolling, and (2) he cured his unverified

2    EEOC charge by later amendment.

3                    b.   *Facial Plausibility:  Disparate Treatment*

4            As noted, Mr. Pandya may cure the EEOC-related deficiencies identified above

5    upon filing an amended complaint.  Accordingly, the court must also address whether the

6    factual allegations supporting Mr. Pandya's claims under Title VII, the ADEA, and the

7    ADA are sufficiently plausible to survive dismissal.  The court begins with Mr. Pandya's

8    discrimination claims, concluding they are factually deficient but may be cured by an

9    amended complaint.

10           Title VII makes it unlawful for an employer "to fail or refuse to hire or to

11   discharge any individual, or otherwise discriminate against any individual with respect

12   to . . . compensation, terms, conditions, or privileges of employment, because of such

13   individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).

14   The ADEA prohibits an employer from, among other things, failing or refusing to hire an

15   individual "because of" that individual's age.  29 U.S.C. § 623(a)(1), 631(a).  The ADA

16   prohibits an employer from discriminating "against a qualified individual with a

17   disability because of the disability."  42 U.S.C. § 12112(a).  In each context, a plaintiff

18   may bring an action against an employer under theories of disparate treatment and

19   disparate impact.  *Fragante v. City & Cnty. of Honolulu*, 888 F.2d 591, 594 (9th Cir.

20   1989) (Title VII); *Smith v. City of Jackson*, 544 U.S. 228, 231-32 (2005) (ADEA);

21   *Raytheon Co. v. Hernandez*, 540 U.S. 44, 53 (2003) (ADA); *see also Raytheon Co.*, 540

22   U.S. at 52-53 (explaining that disparate treatment concerns the employer's subjective

1    intent to discriminate whereas disparate impact concerns facially neutral employment

2    practices that disproportionately harm a certain class of persons).  The court construes

3    Mr. Pandya's complaint as raising disparate treatment claims.

4            To establish a *prima facie* case of disparate treatment under Title VII, a plaintiff

5    must show that:  (1) he is a member of a protected class; (2) he performed according to

6    his employer's expectations; (3) he suffered an adverse employment action; and

7    (4) similarly situated individuals outside his protected class were treated more favorably,

8    or other circumstances give rise to an inference of discrimination.  *Hawn v. Exec. Jet*

9    *Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010).  To establish a *prima facie* case of age

10   discrimination under the ADEA, a plaintiff must allege that he was:  (1) at least 40 years

11   old; (2) performing his job satisfactorily; (3) discharged; and (4) "either replaced by a

12   substantially younger employee with equal or inferior qualifications or discharged under

13   circumstances otherwise giving rise to an inference of age discrimination."  *Sheppard v.*

14   *David Evans & Assocs.*, 694 F.3d 1045, 1049 (9th Cir. 2012) (cleaned up).  To establish a

15   *prima facie* case of disparate treatment under the ADA, a plaintiff must show that he

16   (1) has a disability within the meaning of the ADA; (2) he was qualified for the position;

17   and (3) suffered an adverse employment action because of his disability.  *Snead v. Metro.*

18   *Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001); *see also* 42 U.S.C. § 12102

19   (the ADA defining "disability" as "a physical or mental impairment that substantially

20   limits one or more major life activities" of the individual).

21           Mr. Pandya falls well short of stating an employment discrimination claim under

22   Title VII, the ADEA, and the ADA.  The complaint is silent as to whether Mr. Pandya

1   belongs to a protected class; he raises no factual allegations related to his sex, national

2   origin, religion, age, or disability.  (*See generally* Compl.; Supp.)  And he raises no

3   factual allegations with respect to the other elements of a *prima facie* case of disparate

4   treatment under Title VII, the ADEA, or the ADA.  (*See generally* Compl.; Supp.)

5   Accordingly, the court DISMISSES these claims without prejudice and with leave to

6   amend on the alternative ground that Mr. Pandya fails to state a claim.  If Mr. Pandya

7   wishes to continue pursuing these claims, he must file an amended complaint setting forth

8   factual allegations demonstrating not only that his EEOC charge was verified and

9   rendered timely through equitable principles (*see supra* § III(B)(2)(a)), but also that:

10  (1) he belongs to a protected class by virtue of his sex, national origin, and/or religion,

11  performed according to Bank of America's expectations, suffered an adverse

12  employment action, and similarly situated individuals outside his protected class were

13  treated more favorably or other circumstances exist that give rise to an inference of

14  discrimination; (2) he is at least 40 years old, performed his job satisfactorily, and was

15  discharged under circumstances giving rise to an inference of age discrimination; and/or

16  (3) he has a disability within the meaning of the ADA, was qualified for the position, and

17  suffered an adverse employment action because of his disability.

18      *c.   Facial Plausibility:  Retaliation*

19      Mr. Pandya next alleges "continu[ou]s retali[a]tion from 2018 to 2023," which the

20  court construes as a retaliation claim under Title VII.  (Compl. at 5.)  Title VII makes it

21  unlawful "for an employer to discriminate against any of his employees . . . because he

22  has opposed any practice made an unlawful employment practice by this chapter."  42

U.S.C. § 2000e-3(a).  To establish a *prima facie* claim of retaliation, a plaintiff must allege that (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) there was a causal link between the plaintiff's protected activity and the adverse employment action.  *Maner v. Dignity Health*, 9 F.4th 1114, 1127 (9th Cir. 2021).

Here, Mr. Pandya alleges no facts that would support a *prima facie* case of retaliation under Title VII.  (*See generally* Compl.; Supp.)  For example, it is unclear how Mr. Pandya claims to have suffered an adverse employment action because he claims he voluntarily left Bank of America in 2021—not that he was discharged.  (*See* Compl. at 4.) The court cannot discern from the complaint any other potential basis for an adverse employment action within the meaning of Title VII.  (*See generally id.*; Supp.) Moreover, the court can neither discern how Mr. Pandya engaged in a protected activity, nor whether a causal link exists between any such activity and an adverse employment action.  (*See generally* Compl.; Supp.)  Mr. Pandya's allegations of "continu[ou]s retali[a]tion" over five years (Compl. at 5) amount to nothing more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," insufficient to withstand a motion to dismiss.  *Iqbal*, 556 U.S. at 678.  Accordingly, the court DISMISSES Mr. Pandya's retaliation claim under Title VII without prejudice and with leave to amend on the alternative ground that Mr. Pandya fails to state a claim.  If Mr. Pandya wishes to continue pursuing this claim, he must file an amended complaint setting forth factual allegations demonstrating not only that his EEOC charge was verified and rendered timely through equitable principles (*see supra* § III(B)(2)(a)), but also that:  (1) he

1   engaged in a protected activity, (2) he suffered an adverse employment action, and

2   (3) there was a causal link between his protected activity and Bank of America's adverse

3   employment action.

4       4.  WLAD

5       Finally, Mr. Pandya pleads a claim under Washington's "Civil Rights Act"

6   (Compl. at 4), which the court liberally construes as a disparate treatment claim under

7   WLAD.  WLAD makes it unlawful for an employer "[t]o refuse to hire or to discharge

8   any person," or otherwise to discriminate against a person with respect to the "terms and

9   conditions of employment," because of age, sex, religion, national origin, and disability,

10  among other protected categories.  RCW 49.60.180.  The basic elements of a *prima facie*

11  case of disparate treatment under WLAD and Title VII are the same.  *See Brzycki v.*

12  *Harborview Med. Ctr.*, 2020 WL 1237154, at *6 (W.D. Wash. Mar. 13, 2020); *see also*

13  *Hawn*, 615 F.3d at 1156 (9th Cir. 2010) (describing elements in a Title VII case).

14  Accordingly, Mr. Pandya fails to plausibly state a disparate treatment claim under WLAD

15  for the same reasons that he fails to do so in the Title VII context.  (*See supra*

16  § III(B)(3)(b).)  If Mr. Pandya wishes to continue pursuing his disparate treatment claim

17  under WLAD, he must file an amended complaint setting forth facts demonstrating that

18  he belongs to a protected class by virtue of his age, sex, religion, national origin,

19  disability, or otherwise, and that he performed according to Bank of America's

20  expectations, suffered an adverse employment action, and similarly situated individuals

21  outside his protected class were treated more favorably or other circumstances exist that

22  give rise to an inference of discrimination.

## C.     Leave to Amend

A district court should not dismiss a *pro se* complaint "without leave to amend 'unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Schucker v. Rockwood*, 846 F.2d 1202, 1203-04 (9th Cir. 1988) (per curiam)).  Although Mr. Pandya has failed to plausibly plead his claims, the court cannot conclude that "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Id.* at 1212.  Thus, the court GRANTS Mr. Pandya leave to file an amended complaint that cures the deficiencies identified in this order.  Mr. Pandya shall file his amended complaint, if any, by no later than **March 1, 2024**.  If Mr. Pandya fails to timely comply with this order or fails to file an amended complaint that remedies the deficiencies discussed in this order, the court will dismiss his complaint without leave to amend and close this case.

## IV.     CONCLUSION

For the foregoing reasons, the court GRANTS Bank of America's motion (Dkt. # 7) and DISMISSES Mr. Pandya's complaint without prejudice and with leave to amend.  The court DENIES Mr. Pandya's motion to amend (Dkt. # 10) as moot.

Dated this 9th day of February, 2024.

JAMES L. ROBART
United States District Judge